IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

COUTINHO & FERROSTAAL INC.,
          Plaintiff,             *

                               *

      v.                    *          Civil No. JFM-08-2222

                               *

M/V FEDERAL RHINE, et al.,     *

          Defendants.       *

                               *

                               *

                           ******

## MEMORANDUM

On August 26, 2008, Plaintiff Coutinho and Ferrostaal, Inc. ("Ferrostaal") filed a
complaint against M/V Federal Rhine, Daewoo Logistics Corporation, Federal Atlantic Limited,
Beacon Stevedoring Corporation, and the Rukert Terminals Corporation ("Rukert") pursuant to
28 U.S.C. § 1331, alleging negligent transporation, handling, and storage of the steel pipe cargo
on board the vessel M/V Federal Rhine. Ferrostaal seeks $350,000.00 in compensatory damages.
Now pending before this Court is Rukert's Second Motion for Declaratory Judgment, in which
Rukert seeks to limit its liability, if any, to a maximum of $20,170.91.[1] For the reasons that
follow, I grant Rukert's motion.

## I.      Background

The complaint arises out of a 2007 transaction in which the defendants agreed to
transport, stevedore, and store Ferrostaal's shipment of 41,121 pieces of steel pipes, travelling by
way of the M/V Federal Rhine. (Compl. ¶¶ 6-8.) The goods were shipped from Shanghai, China,
in August 2007, and arrived at the Port of Baltimore in September 2007. (*Id.* ¶¶ 6-7.) Upon

---

[1] Ferrostaal does not dispute that if Ruckert did succeed in limiting its liability, its liability would
be limited to $20,170.91. This figure is based upon the opinion of Ferrostaal's assessor
attributing 60% of the damages to Rukert.

arrival or shortly thereafter, Ferrostaal alleges that the pipes were damaged and depreciated in value. (*Id.*)

Rukert was responsible for storing the goods after they were stevedored. (Mot. Hr'g Tr. 15:22-24, July 27, 2010.) Although it denies responsibility for the shipment's damage, Rukert seeks to limit its potential liability in its Motion for Declaratory Judgment. (ECF No. 59.) Rukert claims that its liability, if any, is limited to "10 times the provided, per ton, monthly storage rate." (Def.'s Mot. Decl. J. ¶ 3.) According to Rukert, the monthly storage rate is $1.50 per metric ton, as indicated in Rukert's December 15, 2006 rate letter to Ferrostaal. (*Id.*; *see also* Def.'s Mot. Decl. J., Ex. D.) In opposition to Rukert's motion, Ferrostaal asserts that the limitation provision is invalid because it is ambiguous and incomplete. (Pl.'s Opp'n 2, 5.)

During a hearing on July 27, 2010, Ferrostaal and Rukert presented their arguments regarding the enforceability of the limitation provision. The parties discussed the formation of the contract that governs the present transaction, as well as the extent of the parties' prior dealings. (Mot. Hr'g Tr. 18:7-36:20.) This Court determined that additional discovery as to the parties' course of dealing was necessary. (*Id.* at 50:5-25.) Consequently, Rukert's motion was denied with an option for renewal after the conclusion of discovery. (ECF No. 78.) Rukert filed its Second Motion for Declaratory Judgment on December 30, 2010 (ECF No. 85) which is now before this Court.[2]

## II.    Standard of Review

The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes a federal court to issue a declaratory judgment, providing, in part:

---

[2] Although, as this opinion reflects, the parties' prior dealings are not determinative of the issue presented, the additional discovery was helpful in clarifying that the Standard Contract Terms form is printed on the reverse of all of Rukert's Warehouse Receipts.

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). The Fourth Circuit has held that "a district court should normally entertain a declaratory judgment action when it finds that the declaratory relief sought: (1) 'will serve a useful purpose in clarifying and settling the legal relations in issue,' and (2) 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422-23 (4th Cir. 1998) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F. 2d 321, 325 (4th Cir. 1937)). That said, "statute and practice have established the rule that the judgment may be refused when it is not necessary or proper at the time under all the circumstances." *Quarles*, 92 F.2d at 325 (4th Cir. 1937) (internal quotation and citation omitted).

## III. Analysis

Rukert moves this Court for declaratory judgment that its liability is limited to $20,170.91. As a terminal operator, Rukert is a warehouseman and is therefore generally permitted to limit its liability. *Ferrex Int'l, Inc. v. M/V Rico Chone*, 718 F. Supp. 451, 456 (D. Md. 1988). In the instant case, Rukert argues that its liability is limited by a clause in its warehouse receipt which, when viewed in conjunction with its rate letter, limits liability to "10 times the provided, per ton, monthly storage rate." (Def.'s Second Mot. Decl. J. ¶ 3.) Rukert claims that Ferrostaal had actual notice of the warehouse receipt provisions, which are mailed after each transaction. (Def.'s Reply Second Mot. Decl. J. 2-3.) Ferrostaal denies that it had

actual knowledge of the liability provision because it did not actually receive the entire warehouse receipt and because the provision was ambiguous.[3] (Pl.'s Opp'n 8.)

## A. Receipt of Limited Liability Provision

Under Maryland law,[4] a warehouse receipt is defined as "a document of title issued by a person engaged in the business of storing goods for hire." Md. Code Ann., Com. Law § 1-201(45). In the event of loss or damage to stored goods, a warehouseman can limit its liability by a term in its warehouse receipt. *Id.* § 7-204(b); *Phillips Bros. v. Locust Indus., Inc.*, 760 F.2d 523 (4th Cir. 1985) (upholding a provision in defendant's warehouse receipt that shortened the time in which the plaintiff could file a claim for conversion); *Kane v. U-Haul Int'l, Inc.*, 218 Fed. Appx. 163, 166 (3d Cir. 2007) (finding that a limited-liability provision is enforceable if there is equal bargaining power between the parties and the clause is not unconscionable or adverse to public interest). Allowing parties to limit their liability "eliminate[s] to a great extent uncertainty

---

[3] Ferrostaal makes other arguments against enforcing the limitation provision that are untenable. It argues that the liability clause is unenforceable because Rukert's tariff incorporates the terms of one warehouse association described as the "American Warehouse Association" while Rukert's warehouse receipt references the "American Warehousemen's Association." (Pl.'s Opp'n 12.) Such a minor discrepancy fails to render the provision unenforceable. Ferrostaal also argues that they were not given an opportunity to elect a higher rate of insurance, as required by section 7-204(b) of the Maryland Commercial Code. (Mot. Hr'g Tr. 20:2-15.) To the contrary, I find that Ferrostaal was given such an opportunity in section 11(c) of Rukert's warehouse receipt and declined to elect a higher value.

[4] Notwithstanding the maritime nature of Ferrostaal's claim against other defendants, Maryland law governs its claim against Rukert. *See Ferrex Int'l, Inc. v. M/V Rico Chone*, 718 F. Supp. 451, 456 (D. Md. 1988) ("[A]n action against a terminal operator for loss of cargo is not within federal maritime jurisdiction, but is a state claimed governed by state law.") (citation omitted); *N.Y. Marine & Gen. Ins. Co. v. S/S Ming Prosperity*, 920 F. Supp. 416, 419 (S.D.N.Y. 1996) ("Admiralty jurisdiction traditionally exists in contract cases if the contract sued upon is wholly maritime in nature. If the contract contains both maritime and non-maritime obligations, admiralty jurisdiction generally is absent.") (internal quotation and citation omitted); *see also Butler Mfg. Co. v. Americold Corp.*, No. 92-2118-JWL, 1993 WL 406730, at *4 (D. Kan. Sept. 20, 1993) (applying the Uniform Commercial Code to dispute involving a warehouseman).

as to who bears the risk of loss in a warehouse storage situation, thus enabling the parties to bargain their contract terms based on this knowledge." *Butler Mfg. Co. v. Americold Corp.*, No. 92-2118-JWL, 1993 WL 406730, at *9 (D. Kan. Sept. 20, 1993); *see also Wolf v. Ford*, 644 A.2d 522 (Md. 1994) (citation omitted). Accordingly, in Maryland, limited liability clauses carry a presumption of validity. *See Cornell v. Council of Unit Owners Hawaiian Vill. Condo., Inc.*, 983 F. Supp. 640, 643 (D. Md. 1997) (citing *Adloo v. H.T. Brown Real Estate, Inc.*, 686 A.2d 298, 301 (Md. 1996)).

In the presently disputed transaction, Rukert provided Ferrostaal with a copy of its monthly storage rates in a rate letter dated December 15, 2006. (Def.'s Second Mot. Decl. J., Ex. 13.) Ferrostaal chose to do business with Rukert based on the rates contained in this letter. (Mot. Hr'g Tr. 34:22-35:7.) At the commencement of storage, a standard-form warehouse receipt was issued by Rukert containing a provision that reads as follows:

> All Material received for storage are [sic] subject to the "Standard Contract Terms and Conditions for Merchandise Warehouseman" approved and promulgated by the American Warehousemen's Association, January 1998. Section 11—*Liability limited to 10 times the provided, per ton, monthly storage rate.*

(Def.'s Second Mot. Decl. J., Ex. 24 (emphasis added)). The present dispute is largely based on the significance and enforceability of the language emphasized above. If Ferrostaal had actual or constructive notice of the limitation clause, then Rukert's liability must be limited pursuant to the receipt's provision. *See Ferrex Int'l, Inc. v. M/V Rico Chone*, 718 F. Supp. 451 (D. Md. 1988). Based upon the record before the court and the arguments of the parties, I find that Ferrostaal had actual notice of the liability clause and therefore Rukert's liability, if any, is limited pursuant to the provision.[5]

---

[5] Alternatively, Rukert claims that Ferrostaal had constructive notice of the terms because they became part of the contract through the parties' prior course of dealing. (Def.'s Reply Second

Ferrostaal's opposition to Rukert's motion relies upon defenses that are typically successful only when raised by victims of unequal bargaining power. Ferrostaal claims, *inter alia*, that it is unlikely the complete warehouse receipt was ever sent (Pl.'s Opp'n 8), that the extent to which liability is limited is out of step with industry norms (Mot. Hr'g Tr. 23:15-18), and that the liability provision is ambiguous (Mot. Hr'g Tr. 32:11-17). By no means, however, is Ferrostaal a novice in the steel industry—it is a multinational corporation that has been dealing in steel for decades. (Def.'s Reply Mot. Decl. J. 9-10 (citing www.ferrostaal.com).) In contract, sophisticated parties like Ferrostaal are held to higher standards than members of the general public. *See, e.g.*, *Caterpillar Overseas, S.A. v. Marine Transp. Inc.*, 900 F.2d 714, 719 (4th Cir. 1990) (concluding that the terms of a bill of lading became a contract because the parties were sophisticated and had a prior course of dealing); *Rotorex Co., Inc. v. Kingsbury Corp.*, 42 F. Supp. 2d 563, 577 (D. Md. 1999) (holding that because the plaintiff was a sophisticated party, it could not claim that the defendant's consequential damages limitation was unconscionable). From the outset, then, Ferrostaal's status as a sophisticated entity raises skepticism as to the strength of their argument against notice.

A complete warehouse receipt from Rukert Terminals Corporation consists of multiple pages, the exact amount of pages depending on the particular transaction. (*Compare* Def.'s Second Mot. Decl. J., Ex. 24, *with* Ex. 25.) In any transaction with Rukert, however, the limitation provision on which the present motion hinges does not appear on the first page of the receipt. (*See id.*) Ferrostaal argues that although they received the first page of some warehouse receipts, it is unlikely they ever received the entire warehouse receipt. (Pl.'s Opp'n, Ex. B.)

---

Mot. Decl. J. 5-10.) Because I find that the Ferrostaal had actual notice of the provision, I need not reach the issue of whether the parties had sufficient dealings for Ferrostaal to be on constructive notice of the term.

Under Maryland law, however, delivery and receipt are presumed if the material is properly mailed and the sender can show that it mails the document in question as part of its ordinary business practices. *Benner v. Nationwide Mut. Ins. Co.*, 93 F.3d 1228, 1234 (4th Cir. 1996) (citations omitted). Testimony by the addressee that he did not receive the material is admissible, but does not conclusively rebut the presumption of receipt. *Id.* at 1234-35. Here, Rukert declares by affidavit that it is their common practice to mail warehouse receipts to their customers. (Def.'s Second Mot. Decl. J., Ex. 2; Def.'s Reply Second Mot. Decl. J., Ex. 1.) Ferrostaal, on the other hand, denies *possession* of the portion of the warehouse receipt containing the limitation provision, but never denies that it *received* all or part of the receipt. (Pl.'s Opp'n, Ex. B.) ("While it appears that we did receive some copies of the fronts of some of the warehouse receipts, neither the original white sheet, nor the standard terms and conditions in any form are in the files that were reviewed by me.").

Moreover, the first page of Rukert's warehouse receipt indicates that the receipt continues on after the first page. (*See, e.g.*, Def.'s Second Mot. Decl. J., Ex. 24.) Accordingly, even if Ferrostaal did not receive more than the first page of the warehouse receipt, courts nevertheless "often [hold] that the missing terms are incorporated by reference, or that the signee should have inquired about their absence." *JHF Vista USA, Ltd. v. John S. Connor, Inc.*, No. 09-30-CCB, 2010 WL 481327, at *4 (D. Md. Feb. 5, 2010) (citing *Sasso v. Travel Dynamics, Inc.,* 844 F. Supp. 68, 73 (D. Mass.1994)). Ferrostaal thus fails to defeat the presumption that the receipt's limitation of liability provision was delivered and received.

## B. Ambiguity

Ferrostaal also argues that Rukert's liability limitation provision is ambiguous. (Pl.'s Opp'n 11-12.) Before addressing the ambiguity question, however, I must first determine the

terms of the warehouse contract, an issue on which the Ferrostaal and Rukert disagree. Both parties agree that negotiations for the present transaction began when Ferrostaal inquired with Rukert as to their current storage rates. (Mot. Hr'g Tr. 16:9-17:23.) They also agree that Rukert responded by sending a rate letter dated December 15, 2006 (*id.*), the terms of which Ferrostaal accepted by letter (Pl.'s Opp'n Second Mot. Decl. J., Ex. 2). Ferrostaal argues, however, that the rate letter is the extent of the parties' contract (Mot. Hr'g Tr. 35:23-24), while Rukert contends that the warehouse receipt supplements the agreement with additional terms (Mot. Hr'g Tr. 28:17-25).

The Fourth Circuit has recognized that while a warehouse receipt can constitute a contract, it can also supplement an existing contract with limited liability terms. *Phillips Bros. v. Locust Indus., Inc.*, 760 F.2d 523, 525 (4th Cir. 1985). In *Phillips Brothers*, the plaintiffs argued that their contract with the defendant was formed before they received a warehouse receipt containing a limitation provision and, therefore, the receipt was a material alteration that could not automatically become part of the contract. 760 F.2d at 525. The Fourth Circuit rejected this argument, finding that a warehouse receipt can add new terms to a contract.[6] *Id.* More specifically, the court held that limited liability clauses added by a warehouse receipt will govern unless they are unreasonable or the other party timely objects. *Id.*; *see also Menorah Ins. Co., Ltd. v. W.F. Whelan Co., Inc.*, 110 Fed. App'x 524, 527 (6th Cir. 2004) ("We are firmly convinced that [the manufacturer's] silent, consistent performance, which is undisputed, demonstrates that it agreed to be bound by the terms in the invoices.").

---

[6] The Fourth Circuit relied on, *inter alia*, Comment 6 to § 2-207 of the Maryland Commercial Code, which states: "If no answer is received within a reasonable time after additional terms are proposed, it is both fair and commercially sound to assume that their inclusion has been assented to." *Phillips Bros. v. Locust Indus., Inc.,* 760 F.2d 523, 525 (4th Cir. 1985).

When assessing the reasonableness of the warehouse receipt in the instant case, the limited liability provision cannot be viewed in isolation. The extent to which the receipt limits Rukert's liability and the affordability of Rukert's storage prices are undoubtedly related: the lower the storage price, the more reasonable a stringent liability limitation becomes. Ferrostaal knew they were getting a price below the market rate from Rukert (Pl.'s Opp'n Second Mot. Decl. J, Ex. D at 62), making a stringent liability provision more reasonable. Notably, Section 7-204(b) of the Maryland Commercial Code, which discusses limitation of liability provisions in warehouseman contracts, does not impose a damage limitation floor. *See* Md. Code Ann., Com. Law § 7-204(b); *see also Butler Mfg. Co. v. Americold Corp.*, No. 92-2118-JWL, 1993 WL 406730, at *3 (D. Kan. Sept. 20, 1993) (interpreting the mirror provision in the Uniform Commercial Code and providing, as an example, "a damage limitation of one cent per ton of goods would conform with the requirements of § 7-204(2)"). Accordingly, I find that the receipt's limited liability section is reasonable and became part of the parties' contract when Ferrostaal failed to timely object to its inclusion.

Equipped with an understanding of the contract's terms, I return to the ambiguity issue. Whether a contract is ambiguous is a question of law. *Washington Metro. Area Transit Auth. v. Potomac Inv. Props., Inc.*, 476 F.3d 231, 234 (4th Cir. 2007) (citation omitted). A contract is ambiguous if a reasonably prudent person could interpret it more than one way. *Calomiris v. Woods*, 727 A.2d 358, 363 (Md. 1999) (citations omitted); *see Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1126 (4th Cir. 1993) (applying Maryland law). In making its determination, courts consider "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution." *Calomiris*, 727 A.2d at 363 (citation omitted).

I find that the warehouse receipt provision is unambiguous as a matter of law. Ferrostaal argues that there is a $500.00 per package limitation in Rukert's tariff that is entirely different from the provision in the warehouse receipt. (Mot. Hr'g Tr. 34:5-35:20.) Ferrostaal emphasizes that the rate letter also contains a $500.00 limitation that differs from the warehouse receipt limitation. (*Id.*) Taken collectively, Ferrostaal argues that these disparities create a level of ambiguity that prevents the warehouse receipt limitation from being enforceable. (*Id.*)

Maryland law and the relevant facts belie Ferrostaal's contentions. By federal regulation, a specific contract between a marine terminal operator and another party supersedes a generic tariff. 46 C.F.R. § 525.2(a)(3). As such, inconsistency between Rukert's tariff and the parties' contract does not create ambiguity. Although it is true that the rate letter contains a limited liability clause that differs from that of the warehouse receipt, the provisions address separate areas of potential liability. Rukert and Beacon Stevedoring Corporation are affiliated companies responsible for storage and stevedoring, respectively. (Mot' Hr'g Tr. 32:21-33:8.) The rate letter limits Beacon's stevedoring liability to $500.00 a package, while the warehouse receipt limits Rukert's storage liability. A reasonably prudent person, especially a sophisticated entity like Ferrostaal, could only interpret the $500.00 per package limitation in the rate letter to apply to stevedoring. *See, e.g.*, *St. Paul Mercury Ins. Co. v. Honeywell Int'l, Inc.*, No. 05-3474-JFM, 2006 WL 2514008, at *3 (D. Md. Aug. 22, 2006) (applying the reasonably prudent person standard to a limited liability term and finding that the provision "could not be more clear and unequivocal").

Finally, Ferrostaal urges that the lack of an actual storage rate renders the liability clause in the warehouse receipt ambiguous. (Mot. Hr'g Tr. 17:18-23, 29:16-20.) This argument is unavailing. Section 7-204 of the Commercial Code does not require Rukert to customize its

standard form for each transaction. Md. Code Ann., Com. Law § 7-204 cmt. 2; *see also Int'l Nickel Co., Inc. v. Trammel Crow Distrib. Corp.*, 803 F.2d 150, 152-53 (5th Cir. 1986). In *International Nickel*, the plaintiff argued that the bailee's liability clause was unenforceable because the provision merely stated that limitation was set at 200 times the base storage rate. *Id.* at 152. The Fifth Circuit found this position unpersuasive and held that the phrase "base storage rate" was unambiguous when reading the contract as a whole. *Id.*; *see also Inland Metals Ref. Co. v. Ceres Marine Terminals, Inc.*, 557 F. Supp. 344, 346 (N.D. Ill. 1983).

A similar finding is warranted here. On its own, the phrase "monthly storage rate" in the warehouse receipt might cause confusion. But the rate letter, which contains the per ton monthly storage rate that Rukert offered and Ferrostaal accepted (Pl.'s Opp'n, Ex. D at 62), removes any ambiguity as to what amount is meant by the language of Rukert's receipt. When viewing the contract as a whole, the limited liability clause in the warehouse receipt can be interpreted only one way and is therefore unambiguous.

Because I find that Ferrostaal fails to defeat the presumption that it received the warehouse receipt, complete with the limitation of liability provision, and because that provision is unambiguous, I find that Ferrostaal had actual notice of the limitation of liability provision and I therefore grant Rukert's Motion for Declaratory Judgment, limiting Rukert's liability to the amount of $20,170.91.

A separate order is being entered herewith.

July 29, 2011
Date

/s/
J. Frederick Motz
United States District Judge